UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CINDY HULTGREN,

        Plaintiff,

v.                               Case No. 2:20-cv-892-SPC-NPM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## REPORT AND RECOMMENDATION

Plaintiff Cindy Hultgren seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 21),[1] and the parties filed a Joint Memorandum (Doc. 30). As discussed in this opinion and order, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.     **Factual and procedural history**

On November 12, 2014, Hultgren filed an application for a period of disability and disability insurance benefits, alleging July 27, 2014, as her disability onset date. (Tr. 73). Hultgren's application was denied initially and upon reconsideration. (Tr. 73). On February 23, 2017, Administrative Law Judge ("ALJ") David Begley held an administrative hearing. (Tr. 73). On June 22, 2017, ALJ Begley issued a decision finding Hultgren not disabled. (Tr. 70-84). The Appeals

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

Council denied Hultgren's request for review (Tr. 90-92), and Hultgren did not seek judicial review of the administration's denial of her 2014 application.

On June 18, 2018, Hultgren filed another application for a period of disability and disability insurance benefits, alleging a disability onset date of June 20, 2017. (Tr. 111, 126, 256-257). Hultgren simultaneously applied for supplemental security income, initially alleging a disability onset date of January 1, 2014, which was later amended to June 20, 2017. (Tr. 96, 127, 245-255, 258-264). In both of her 2018 applications, Hultgren alleged disability due to the following conditions: PTSD (post-traumatic stress disorder); IBS (irritable bowel syndrome); degenerative disc disease; bipolar; diabetes; hypertension; osteoarthritis; spinal stenosis; bursitis; and seizures. (Tr. 97, 112). As of the alleged onset date (June 20, 2017), Hultgren was 51 years old, and she has at least a high school education. (Tr. 49, 96, 111, 279). Her past work included a job as a hair stylist. (Tr. 46, 50-51, 279).

Hultgren's second round of applications were denied initially on September 24, 2018, and upon reconsideration on June 3, 2019. (Tr. 96-167). At Hultgren's request, ALJ Raymond Rodgers held a hearing on January 6, 2020. (Tr. 42-69, 194). The ALJ issued an unfavorable decision on January 17, 2020, finding Hultgren not disabled from June 20, 2017, through the date of the decision. (Tr 17-34). Hultgren's timely request for review by the administration's Appeals Council was denied. (Tr.

1-3). Hultgren then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage,

the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there is a sufficient number of jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 416.912, 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, "the overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

In this matter, ALJ Rodgers found Hultgren met the insured status requirements through September 30, 2018. (Tr. 22). At step one of the evaluation,

the ALJ[5] found Hultgren had not engaged in substantial gainful activity since her alleged onset date. (Tr. 22). At step two, the ALJ characterized Hultgren's severe impairments as: fibromyalgia; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; mild degenerative joint disease of the shoulders; vertigo; tremor; diabetes with neuropathy; carpal tunnel syndrome; seizure disorder; obesity; bipolar disorder; PTSD; anxiety; and a mild cognitive impairment. (Tr. 22). At step three, the ALJ determined Hultgren did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 23).

As the predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant maintains the residual functional capacity to: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in a hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; no exposure to very loud noise as defined by the SCO code; no exposure to extreme bright lighting or blinking lights; no exposure to hazardous machinery or unprotected heights; able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations; low stress work defined as only occasional decision-making only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

---

[5] Any reference to an "ALJ" will hereinafter refer to ALJ Rodgers, as his decision is before this court for review. Any reference to a ALJ Begley will specify as much.

(Tr. 26).[6] Consequently, at step four, the ALJ determined Hultgren was not capable of performing her past relevant work. (Tr. 32). At step five, the ALJ found Hultgren could perform other work that exists in significant numbers in the national economy. In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual with Hultgren's age, education, work experience, and RFC could perform:

(1) electronics worker (DOT# 726.687-010); light; SVP 2; 60,000 positions in the national economy;

(2) housekeeper (DOT# 323.687-014); light; SVP 2; 500,000 positions in the national economy; and

(3) production assembler (DOT# 706.687-010); light; SVP 2; 200,000 positions in the national economy.

(Tr. 33-34).[7]

## II.  Analysis

Hultgren's appeal presents the following questions for review:

(1)     whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers;

---

[6] The RFC corresponds with a light exertional level. (Tr. 30-31, 64).

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

(2)    whether the ALJ reopened the prior application;

(3)    whether the ALJ erred by failing to include the need for a hand-held assistive device in the RFC and in hypothetical questions to the vocational expert;

(4)    whether substantial evidence supports the ALJ's finding that Hultgren can carry out detailed instructions;

(5)    whether the ALJ improperly circumvented the medical-vocational guidelines (the "grids"); and

(6)    whether the ALJ erred by finding Hultgren could perform work at SVP 2.

(Doc. 30, pp. 23, 34, 38, 41, 44, 47).

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020)

(quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers**

Hultgren argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner (42 U.S.C. § 902(a)(3)). (Doc. 30, pp. 47-50). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 30, p. 50). But Hultgren's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill, an officer

removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Hultgren has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm.

"Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. … I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For these reasons, this court, like its sister courts throughout the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *see also Tibbetts v. Comm'r of Soc. Sec.*, No.

2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-cv-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838 (M.D. Fla. Nov. 23, 2021), report and recommendation adopted, No. 6:20-cv-2357-GKS-EJK, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022).

### C.   Whether the ALJ reopened the prior application

Hultgren argues that because ALJ Rodgers adjudicated a period that began on June 20, 2017, he implicitly reopened the prior disability application that had been previously adjudicated by ALJ Begley through June 22, 2017. Consequently, Hultgren claims ALJ Rodgers should have considered the entire period covered by the prior application, which began July 27, 2014. (Doc. 30, pp. 38-40).

But, as the Commissioner points out, both Hultgren and the ALJ mistakenly thought ALJ Begley's decision was dated June 19, 2017. Hultgren repeatedly stated her alleged onset date was June 20, 2017, so ALJ Rodgers issued the current decision with June 20, 2017, as the alleged onset date. In her pre-hearing memorandums, which she provided to ALJ Rodgers, Hultgren said ALJ Begley's decision was dated June 19, 2017. (Tr. 361, 363). Even the bookmark corresponding to the prior ALJ decision in the PDF electronic record for the case says the prior decision was dated June 19, 2017. Further, the agency's electronic records system has June 19, 2017, as

the date of the prior ALJ decision. However, the prior ALJ decision was, in fact, dated June 22, 2017. (Tr. 70).

Moreover, in her application for benefits and disability paperwork, Hultgren used June 20, 2017, as the alleged onset date for this claim. (Tr. 256, 340). Then, at the hearing, when the ALJ asked to confirm Hultgren's alleged onset date was June 20, 2017, her attorney stated, "That's correct, Your Honor." (Tr. 46). The ALJ then stated, "That reflects the last decision," to which plaintiff counsel responded "Yes, Your Honor." (Tr. 46). Based on all of these representations by Hultgren, her representative, and the agency's systems, ALJ Rodgers reasonably, but mistakenly, believed the prior ALJ decision was dated June 19, 2017, and the alleged onset date for this claim was the day after.

Notably, ALJ Rodgers did not discuss any evidence before June 22, 2017, and he did not reference the prior ALJ decision. According to the Eleventh Circuit, "a final decision by the Secretary will be deemed reopened if it is 'reconsidered on the merits to any extent and at any administrative level.'" *Passapulos v. Sullivan*, 976 F.2d 642, 645-646 (11th Cir. 1992) (citations omitted); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (same, quoting *Passapulos*). The ALJ here did not reconsider the merits of the prior ALJ decision or the evidence underlying it. Therefore, he did not implicitly reopen it. *Cf. Lacy v. Apfel*, No. 2:97-cv-153-FtM-29D, 2000 WL 33152059, *2 (M.D. Fla. Sept. 11, 2000), report and recommendation

adopted, No. 2:97-cv-153-FtM-29D, 2000 WL 33277680 (M.D. Fla. Oct. 19, 2000) (finding ALJ de facto reopened prior administrative decision because he "reconsidered the evidence, and reached a different conclusion than the Commissioner's previous determination").

**D. Whether the ALJ erred by failing to include the need for a hand-held assistive device in the RFC and in hypothetical questions to the vocational expert**

Hultgren claims the ALJ should have included the need for a hand-held assistive device in the RFC and, by extension, in his questions posed to the vocational expert. For support, she points to an August 30, 2018, progress note by Michael Martinez, M.D., in which he ordered a walker and stated it was medically necessary to help prevent falls. (Tr. 1300). She also relies on two other instances in which providers reported a history of falling (Tr. 2983) and an assessment of frequent falls (Tr. 2421). She further notes the ALJ recognized her severe impairments of degenerative disc disease of the lumbar spine, vertigo, seizure disorder, and obesity. (Doc. 30, p. 42).

For a hand-held assistive device to be found medically necessary, medical documentation must "establish[] the need for a hand-held assistive device to aid in walking or standing, and describ[e] the circumstances for which it is needed (i.e., all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, *7 (1996). When the

record establishes a claimant needs a hand-held assistive device to ambulate, the ALJ "must always consider the particular facts of a case" and determine the circumstances under which it is required. *Id.*

Hultgren failed to meet her burden of showing that an ambulatory device was medically necessary. *See* 20 C.F.R. §§ 404.1512, 416.912 (stating that a claimant bears the burden of proving she is disabled); *see also* SSR 96-9p, 1996 WL 374185 at *7 (stating a finding of medical necessity must be based on medical documentation). Hultgren had to present medical documentation "establishing the need for a hand-held assistive device to aid in walking or standing, ***and*** describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185 at *7 (emphasis added). If the claimant fails to meet this burden, an ALJ is not required to include the use of a walker in the RFC. *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-GKS-PRL, 2018 WL 4126528, *3 (M.D. Fla. July 9, 2018), report and recommendation adopted, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018). In addition, "a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Id.*

In this record that contains more than 3,000 pages of medical records, only one record mentions the need for a walker—Dr. Martinez's August 30, 2018, note in which he says a walker was "medically necessary in her particular case to prevent falls." (Tr. 1300). However, he did not specify or describe the circumstances for

which the walker was allegedly needed and he did not indicate whether she needed it for balance, prolonged walking, uneven terrain, or any other specific circumstance. His subsequent treatment notes do not mention the need for a walker, and longitudinal records do not document observations of her using a walker. (*See, e.g.*, Tr. 1372-1376, 2437-2442).

Moreover, the ALJ considered Hultgren's ability to ambulate. At step three, the ALJ considered listing 1.04 due to Hultgren's degenerative disc disease of the cervical and lumbar spines. In finding the listing was not met, the ALJ observed that the medical record did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis. And he specifically stated "there is no evidence that [Hultgren's] back disorder has resulted in an inability to ambulate effectively." (Tr. 23).

When discussing Hultgren's RFC, the ALJ further considered Hultgren's testimony about her limited ability to stand, back problems, hip problems, and neuropathy. (Tr. 27). Hultgren did not testify that she required or used an ambulatory device, nor did anyone make any observations on the record that Hultgren used a walker during the hearing. The ALJ also considered the objective medical evidence, including treatment records indicating normal gait (Tr. 28-29, 31) and that she had used an exercise bike on a regular basis (Tr. 30). Ultimately, the ALJ concluded that Hultgren's allegations of complete and total disability cannot be fully accepted and

that she could perform unskilled, light work. (Tr. 30). He made the specific

observations for his conclusions as to Hultgren's physical capabilities as follows:

> Specifically, diagnostic imaging of the lumbar spine dated in 2014 showed minimal degeneration and, although the claimant alleged debilitating uncontrollable tremors, a neurosurgeon in 2014 was unable to elicit an intentional tremor. With respect to diagnostic imaging of the cervical spine, there is no evidence of canal stenosis or neural foraminal narrowing. Moreover, the physical examination findings from the claimant's internist and her pain management specialist are consistent with the ability to perform light level work (Exhibits B8F and B18F). Additionally, the claimant's diabetes is well-controlled and she has been seizure free since 2015. The claimant's physical examinations have typically shown a normal gait; decreased range of motion and tenderness of the left hip; decreased range of motion, tenderness, and pain of the cervical back; bony tenderness of the lumbar back; and normal strength.

(Tr. 30-31).

In short, Hultgren has not met her burden of providing medical documentation

establishing a need for an ambulatory device and any circumstance for which it is

needed. SSR 96-9p, 1996 WL 374185 at *7. Despite this, the ALJ nevertheless

considered her ability to ambulate. Therefore, the ALJ did not err by not making any

specific findings regarding an assistive device.

### E.    Whether substantial evidence supports the ALJ's finding that Hultgren can carry out detailed instructions

Hultgren next argues the ALJ's finding that she can carry out detailed

instructions is not supported by substantial evidence because it conflicts with the

decision by ALJ Begley, the state [8] agency findings at reconsideration, the

---

[8] In Florida, a federally funded state agency develops evidence and makes the initial determination

neuropsychological evaluation by Dr. Shain, and the opinions of Dr. Vonetes. (Doc. 30, pp. 23-24). As previously noted, ALJ Rodgers did not reopen ALJ Begley's decision. And ALJ Rodgers is not bound by any previous determination, so this argument is without merit. (Tr. 45); *see Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) ("Because the factual time period for Luckey's current application is different from her previous application, administrative res judicata does not apply.").

Moreover, while ALJs will consider prior administrative medical findings, they will not defer to such findings. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Ultimately, the ALJ is "responsible for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. §§ 404.1513a(b), 416.913a(b). The state agency psychologist—Janet Anguas-Keiter, Psy.D.— found at the reconsideration level that Hultgren is moderately limited in the abilities to understand, remember, or apply information, remember locations and work-like procedures,[9] and understand and remember detailed instructions. (Tr. 136, 143, 155, 162). The ALJ found the reconsideration opinion that Hultgren is capable of

---

whether a claimant is disabled. *See* 42 U.S.C. § 421(a).

[9] The moderate limitation in the ability to remember locations and work-like procedures appears in the reconsideration decision for her disability insurance benefits application (Tr. 143-144 (May 31, 2019)) but not in the reconsideration decision for her supplemental security income application (Tr. 162-163 (April 25, 2019)), both of which were prepared by the same individual.

completing simple, routine tasks and some more complex tasks persuasive. However, he also found the evidence supports an even "greater degree of limitations," in particular:

> [Hultgren] is able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations; she can perform low stress work defined as only occasional decision-making [and] only occasional changes in the work setting; she can have occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

(Tr. 31).

Hultgren argues the ALJ's RFC finding conflicts with the aforementioned state agency findings because, she claims, the ALJ's finding that she can perform detailed instructions is *less* limiting. (Doc. 30, p. 25). But she does not elaborate further, precluding the need to consider the issue. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue....").

Even so, the RFC finding that Hultgren can perform "detailed but uninvolved written or oral instructions" (Tr. 26) is consistent with "reasoning level two" work, which the ALJ found Hultgren could perform.[10] As the Eleventh Circuit has

---

[10] The DOT defines reasoning level two as "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C - Components of the Definition

explained, "detailed" as used in the DOT's definition of reasoning level two jobs goes to the length of the instructions, not the complexity. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021). The *Buckwalter* court, therefore, held there is no apparent conflict between limiting a claimant to detailed but uninvolved instructions and limiting a claimant to simple, routine tasks. *Id.* Thus, even if the ALJ were to give any deference to the state agency findings, there is no inconsistency between the RFC's use of "detailed but uninvolved" instructions and the state-agency limitation to simple, routine tasks.[11]

Finally, Hultgren argues the ALJ substituted his own opinion for that of the medical professionals because he found the opinions of Michael Shain, Ph.D.,[12] and

---

Trailer, 1991 WL 688702. This is the precise language in the RFC. (Tr. 26).

[11] The ALJ also found Hultgren could perform the job of housekeeper, which is reasoning level one. *Cleaner, Housekeeping*, DICOT 323.687-014, 1991 WL 672783. Since there are 500,000 jobs in the national economy for the housekeeping occupation (Tr. 33), any reasoning-level error related to the other representative occupations supplied by the vocational expert and relied upon for the ALJ's step-five finding is harmless. *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (finding any error in ALJ's conclusion that the claimant could perform two jobs was harmless because the claimant was capable of performing the third, remaining job, which existed in sufficient numbers); *see also Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) ("We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers." (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding an aggregate of four occupations totaling 23,800 jobs nationally was significant).

[12] For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R.

Alfred Vonetes, Psy.D., generally unpersuasive. Since Hultgren has not claimed the ALJ erred in how he assessed the opinions, any argument to this effect is waived. *See, e.g.*, *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (finding claimant waived arguments by not expressly challenging ALJ's findings) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")).

Hultgren's argument that the ALJ substituted his judgment for that of the medical professionals is unfounded. The ALJ merely performed his duty of weighing the conflicting evidence in the record. *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) ("It is 'solely the province of the Commissioner' to resolve conflicts in the evidence and assess the credibility of witnesses."). The ALJ has the sole responsibility of assessing the claimant's RFC, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (stating "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter

---

§ 416.913(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 416.920c, 416.927(c). Dr. Shain's evaluation contained only objective findings and no statements about Hultgren's functional abilities and limitations (Tr. 2610-2620). Even though the ALJ treated Shain's objective findings as an opinion, he ultimately found it unpersuasive because it did not contain the type of information that would render it an opinion—*i.e.*, "no specific function-by-function analysis of [Hultgren's] work abilities." (Tr. 32).

will be considered, it is not dispositive"). Therefore, an ALJ does not assume the role of a doctor by sorting through the conflicting evidence and making an RFC assessment. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007) (holding the ALJ did not substitute his judgment for the doctor; he found the opinion inconsistent with the record evidence and accordingly assessed the RFC based on the record). Accordingly, Hultgren has failed to show any error.

## F.    Whether the ALJ improperly circumvented the "grids"

Hultgren claims the ALJ should have limited the RFC to sedentary work because she cannot operate foot controls and various diagnoses suggest, according to her, that she is unable to perform light work. Had the ALJ done this, Hultgren claims she would "grid out" at step five. (Doc. 30, pp. 34-35).[13]

An inability to operate foot controls does not preclude a finding that a claimant can otherwise perform light work. Relatively few light jobs are performed in a seated

---

[13]  At step five, an ALJ must determine whether a claimant can adjust to other work sufficiently available in the economy based on age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c). The administration has adopted rules to account for the decreased likelihood of adjusting to a new job with increasing age that—in combination with other factors—provide a regulatory conclusion that there is an insufficient number of jobs to which the claimant could adjust. *See* 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2. These rules generate "grids," with each grid based on whether the claimant's RFC allows for the full range of occupations classified as sedentary, light, or medium on the physical exertion scale.

position, but when a light job involves sitting most of the time, it usually involves some pushing and pulling of arm-hand or leg-foot controls at greater exertion levels (weight) than sedentary work. SSR 83-10, 1983 WL 31251, *5 (1983). SSR 83-10 does not state that all light jobs require the ability to operate foot controls, nor has Hultgren cited any authority stating as much.

Moreover, the ALJ properly relied on a vocational expert instead of the grids because the RFC finding included limitations that eroded the occupational base for light jobs. The grids direct a disability determination only when an individual's exertional RFC coincides with the ranges of work as defined in the regulations (20 C.F.R. §§ 404.1567, 416.967) and the occupational base is clearly not affected. *See* SSR 83-12, 1983 WL 31253, *2 (1983). If the RFC includes limitations that might erode the number of jobs available under a certain grid rule and the extent of the erosion is unclear, then the ALJ must consult a vocational expert, and the grids can only be used as a framework. *See* SSR 83-12, 1983 WL 31253 at *2.

Here, the ALJ limited Hultgren to light work with several exertional, postural, manipulative, and environmental limitations. So, the RFC was for a reduced range of light work. (Tr. 26). Since the occupational base for light work had been eroded, the ALJ had to consult a vocational expert to determine how many jobs, if any, were available for an individual with Hultgren's vocational profile and RFC. An ALJ may rely upon a vocational expert's knowledge or expertise. *Bryant v. Comm'r of Soc.*

*Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Given the eroded light occupational base, the ALJ properly consulted a vocational expert using comprehensive hypothetical questions that contained limitations that were eventually incorporated into the RFC. (Tr. 63-65); *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

Additionally, Hultgren's argument that the RFC is not supported fails because her argument is based entirely on her symptoms and diagnoses. A claimant's subjective complaints alone cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Also, a diagnosis alone does not establish a functional limitation, and the mere existence of an impairment does not reveal its effect on a claimant's ability to work. *See Fields v. Comm'r of Soc. Sec.*, No. 3:16-cv-698-PDB, 2017 WL 4054508, *7 (M.D. Fla. Sept. 14, 2017) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely

medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986))). A claimant must show, with objective medical evidence, that her diagnosed impairments cause disabling functional limitations. Hultgren has not done so here. Accordingly, substantial evidence supports the ALJ's finding that the objective evidence supports the RFC.

### G. Whether the ALJ erred by finding Hultgren could perform work at SVP 2

Finally, Hultgren argues the ALJ erred in finding she could perform work at SVP 2 due to administrative explanations from the reconsideration level that found that Hultgren could only perform work that requires "only a very short, on-the-job training period," which she equates to SVP 1. (Doc. 30, pp. 44-45 (citing Tr. 180-181)). This argument has no merit.

As the ALJ explained at the start of the hearing, he was not bound by prior administrative decisions. (Tr. 45). In fact, the administration's regulations specifically state that findings made by a state disability examiner at a previous level of adjudication about a vocational issue are inherently neither valuable nor persuasive. *See* 20 C.F.R. §§ 404.1520b(c)(2), 416.920b(c)(2). So, the ALJ was not bound by the reconsideration notice saying Hultgren could perform work involving very short, on-the-job training (Tr. 180-181). Rather, the ALJ had to make his own step five determination, which was done here.

Furthermore, there is no inconsistency between SVP 2 and a very short, on-the-job training period. Using the skill level definitions in 20 C.F.R. §§ 404.1568(a) and 416.968(a), unskilled work corresponds to a SVP of 1 and 2. SSR 00-4P, 2000 WL 1898704, *3 (2000). A SVP 1 job means "short demonstration only," whereas a SVP 2 job means "[a]nything beyond short demonstration up to and including 1 month." *Garrow v. Saul*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, *4 n.6 (M.D. Fla. Aug. 19, 2020), report and recommendation adopted sub nom. *Garrow v. Comm'r of Soc. Sec.*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5797867 (M.D. Fla. Sept. 29, 2020) (citing *Appendix C - Components of the Definition Trailer*, Dictionary of Occupational Titles, 1991 WL 688702 § II (4th ed., rev. 1991)). The definition of SVP 1 omits any reference to a training period. Thus, the reference to a "training period" at the reconsideration level corresponds with SVP 2.

## III.  Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence, and it presents no reversible error or only harmless error. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in defendant's favor.

Reported in Fort Myers, Florida, on February 9, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**